### GINTER *v.* STATE OF INDIANA.

[No. 23,769. Filed December 2, 1920.]

CRIMINAL LAW.—*Rape.*—*Motion for New Trial.*—*Consideration of Evidence by Trial Judge.*—*Presumption.*—The Supreme Court, on appeal from a conviction of rape of a female child, must presume that the trial judge who passed upon the motion for a new trial carefully considered the evidence to determine whether the jurors could reasonably have believed the evidence supporting a conviction.

From Jay Circuit Court; *E. E. McGriff,* Judge.

Prosecution by the State of Indiana against Omer Ginter. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Charles H. Shockney* and *S. A. D. Whipple,* for appellant.

*Ele Stansbury,* Attorney-General, and *Remster A. Bingham,* for the state.

TOWNSEND, J.—Appellant was tried by jury and convicted of rape of a female child under the age of sixteen years.

While the question sought to be presented is the sufficiency of the evidence, yet appellant's counsel rather admit that there is abundant evidence as to every element of the crime. To be exact, appellant's counsel contend that this girl's story of her ravishment, under the circumstances shown by the evidence, is so preposterous as to lead rational beings to the conclusion that it is a mere fabrication.

On the day of the offense charged in the indictment, appellant was twenty-six years old, and the prosecuting witness fifteen and one-half years old. Appellant lived in an eight-room house on a farm, and as members of his household there were his wife, his baby, eight months old, his sister and her husband, and prosecuting witness. Appellant's wife was in poor health and he procured the prosecuting witness to assist with the housework. Prosecuting witness worked two weeks in appellant's household. During that time, according to her story, she occupied a bedroom on the ground floor of this house which adjoined and opened into a bedroom occupied by appellant, his wife and baby. Appellant's sister and her husband occupied a bedroom upstairs. The bedroom occupied by prosecuting witness had a door leading to a living room on the south side of the house; also a door to the west leading into the bedroom occupied by appellant and his wife. From this bedroom occupied by appellant and his wife another door opened on the west side of the room into the dining room. According to the story of the prosecuting witness, appellant first made advances to her

on the Wednesday night of the second week that she was in the household. She was in the dining room at the time, committing to memory exercises for Children's Day. Other members of the family had retired shortly before. The door leading from the dining room to appellant's bedroom occupied by the wife and baby was open, as was also the door from that bedroom to the one in which prosecuting witness slept. While prosecuting witness was sitting in the dining room, committing a poem to memory by the light of a lamp on a desk or table, appellant began his advances towards her. She testified that during these advances there was some conversation between her and the appellant, not in a whisper but in a low tone; that in the midst of his importunities appellant was attracted by the noise of water running from a faucet in the kitchen and went into the kitchen to turn off this faucet; that thereupon prosecuting witness left the dining room, going through the bedroom where appellant's wife and baby were to her bedroom, and hid in a closet in that room; that appellant returned from the kitchen, also passed through the bedroom where his wife and baby were into the bedroom where prosecuting witness was hiding in the closet, found her, and induced her to come out of the closet; that they there again entered into conversation which was in a low tone, not a whisper; that at that time the door between prosecuting witness' bedroom and that occupied by his wife was open; that at the solicitation of appellant, prosecuting witness disrobed to retire; that thereupon appellant went back through the same bedroom to the dining room to blow out the light; that when he returned that time he closed the door between prosecuting witness'

bedroom and that occupied by appellant's wife; that while appellant was gone to the dining-room to blow out the light, prosecuting witness instead of getting into bed rolled under the bed; that appellant again talked to her when he returned and induced her to come out from under the bed; that they talked, not in whispers but in low tones; that after appellant had occupied the bed with prosecuting witness, he returned to the bedroom occupied by his wife and baby and he and his wife at once entered into conversation, indicating that his wife had been awake; that they talked in ordinary conversational tones, but not loud enough so that prosecuting witness could hear what they said.

Prosecuting witness further testified that she made no outcry or resistance other than that indicated by the foregoing testimony. She also testified that she left appellant's house on the following Saturday and went home; that she told her mother what had occurred; that she also told a girl friend of hers what had occurred. When she left appellant's house on the following Saturday, she did not take her clothing with her. Her father and mother came after the clothing, and at that time the mother had a conversation with appellant's wife, in which she says she practically told appellant's wife what had happened. From the mother's version of this conversation it appears that appellant's wife did not resent the charge, nor indicate that she was unaware of the facts.

Appellant himself denied *in toto* the testimony of the prosecuting witness. His wife testified that no such transaction as that detailed by prosecuting witness occurred, or could have occurred. Appellant's sister and her husband testify to facts and circum-

stances from which it might be inferred that such a crime could not have been committed.

Appellant's counsel say that it is beyond belief that appellant's wife should know of such conduct on the part of her husband without protest. . They say that she must have known it; for, according to the story, she was awake and talked with the appellant when he came from the bedroom of the prosecuting witness. They stigmatize the story told by the prosecuting witness as a description of a carnival of crime so lascivious in minute details that it would "put Boccaccio to shame." They say that "every circumstance, every surrounding, every pulsation of nature, besides four living witnesses, contradict every word of the crime detailed by her." In other words, that the whole stage setting of prosecuting witness' story is so contrary to human experience that reasonable beings would not believe it.

It seems that twelve average men believed it, and that a thirteenth one, the trial judge, experienced in law and in weighing evidence, by overruling a motion for a new trial, found that the twelve were not unreasonable in believing it. Nor are we quite prepared to agree with appellant's counsel that the story would "put Boccaccio to shame." We should rather think that it might cause him to flush with pride to know that after 600 years his portrayal of the lasciviousness in human nature is still accurate. Counsel's argument here would have great force before a jury; and before the trial court when motion for a new trial was being passed upon. The reason that we cannot overthrow the action of a jury and the trial court is because we know that words spoken by the witnesses are not the sole things that carry con-

viction. There is an indefinable something in a human being called personality. Words spoken by one witness carry conviction to the minds of the jurors and the court, while the same words spoken by another witness have the opposite effect.

We realize that the charge of rape is sometimes easy to make and hard to disprove; but, even if the jury is misled by passion and prejudice, we must presume that the trial judge, who passed upon a motion for a new trial, carefully considered the evidence to determine whether the jurors could reasonably have found as they did.

Appellant's counsel present no question as to improper instructions, nor the exclusion of proper evidence, nor the admission of improper evidence. The sole question is the one that we have here indicated.

The judgment of the trial court is affirmed.